# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

## No. 14-13715-E

---

## NEDZAD MILJKOVIC,

Plaintiff / Appellant,

v.

## SHAFRITZ AND DINKIN, P.A. and MITCHELL A. DINKIN,

Defendants / Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE MIDDLE DISTRICT OF FLORIDA,
## TAMPA DIVISION
## Lower Court Case No.:  8:14-CV-00635

---

## APPELLANT'S REPLY BRIEF

---

**ERIC C. ROBERSON, P.A.**
Eric C. Roberson
Florida Bar No. 0014649
2064 Park Street
Jacksonville, FL  32204
(904) 404-8800
(904) 517-8387 (facsimile)
eric@robersonlawjax.com

Counsel for Appellant

**SCOTT R. BAURIES**
Florida Bar No. 0014968
7207 Vaughn Road
Canton, GA 30115
(904) 200-1352
(904) 517-8387 (facsimile)
scott.bauries@uky.edu

Counsel for Appellant

# TABLE OF CONTENTS

Page No.

TABLE OF CITATIONS ........................................................................2

ARGUMENT AND CITATIONS OF AUTHORITY ............................................5

I.     Appellees' Factual Arguments Disregard the Motion to
       Standard ........................................................................................5

II.    Appellees' Sworn Statement is Actionable Regardless of Whether it
       Constitutes a "Communication" Under the FDCPA………………………….7

III.   Section 1629d of the FDCPA Prohibits False or Misleading Affidavits .......9

IV.    Appellees' Sworn Statement is a Significant, Material Violation of
       Section 1692e Despite Their Attempts to Minimize it................................11

V.     Appellees' Groundless Sworn Statement of Dispute and the Actions
       Following it Give Rise to a Plausible Claim for Relief under Section
       1692f ........................................................................................16

CONCLUSION .......................................................................................27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................29

CERTIFICATE OF SERVICE ...................................................................30

# TABLE OF CITATIONS

Page No.

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................25

*Austin v. Frederick J. Hanna & Associates, P.C*,
  No. 1:14-CV-00561-SCJ-JF 2014 WL 4724885 (N.D. Ga. July 10, 2014).......11

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
  480 F. 3d 470 (7th Cir. 2007) ....................................................22, 23

*Bray v. Cadle Co.*,
  No. 4:09-cv-663 2010 WL 4053794 (S.D. Tex. Oct. 14, 2010).............14, 15, 27

*Chalik v. Westport Recovery Corp.*,
  677 F. Supp. 2d 1322 (S.D. Fla. 2009) ................................ 10, 14, 15, 16, 17, 27

*Construction Aggregates, Ltd. v. Forest Commodities Corp.*,
  147 F. 3d 1334 (11th Cir. 1998) .........................................................19

*Davis v. Coca-Cola Bottling Co. Consol.*,
  516 F. 3d 955 (11th Cir. 2008) ..........................................................21

*Foti v. NCO Financial Systems, Inc.*,
  424 F. Supp. 2d 643 (S.D.N.Y 2013) ...........................................19, 20

*Hogue v. Palisades Collection, LLC,*,
  494 F. Supp. 2d 1043 (S.D. Iowa 2007) .........................................12, 14, 26, 27

*Jeter v. Credit Bureau, Inc.*,
  760 F. 2d 1168 (11th Cir. 1985) ..........................................................9

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
  507 U.S. 163 (1993)...........................................................................18, 23

*LeBlanc v. Unifund CCR Partners*,
  601 F. 3d 1185 (11th Cir. 2010) ..........................................................9

*Strickland v. Alexander*,
    --- F. 3d --- No. 13-15483 2014 WL 6480542 (11th Cir. 2014)...........................6

*Tsenes v. Trans-Continental Credit and Collection Corp.*,
    892 F. Supp. 461 (E.D.N.Y. 1995) .............................................................19, 21

## CONSTITUTION

U.S. Const. Art. VI cl. 2.............................................................................16

## FEDERAL STATUTES

15 U.S.C. § 1692a ....................................................................................8

15 U.S.C. § 1692c ....................................................................................8

15 U.S.C. § 1692d..............................................................6, 8, 9, 10, 11, 19

15 U.S.C. § 1692e..........................................................6, 8, 11, 15, 19, 22

15 U.S.C. § 1692f ……………………………………… 6, 8, 15, 16, 19, 22, 26, 27

15 U.S.C. § 1692n.....................................................................................16

## STATE STATUTES

Fla. Stat. Ann. § 57.105 ...........................................................................16

Fla. Stat. Ann. § 77.041 .......................................................................12, 13

Fla. Stat. Ann. § 222.11 ............................................................................15

## RULES

Fed. R. App. P. 25 ....................................................................................30

Fed. R. App. P. 32 ....................................................................................29

Fed. R. Civ. P. 8.............................................................................20, 21, 27

Fed. R. Civ. P. 10. ..............................................................................19, 21

Fed. R. Civ. P. 12 ..................................................................................................21

Fed. R. Civ. P. 13 ..................................................................................................19

## ARGUMENT AND CITATIONS OF AUTHORITY

Appellant's claims arise from Appellees Shafritz and Dinkin, P.A. and Mitchell A. Dinkin's (collectively, "Dinkin") actions in a state court garnishment proceeding.  After garnishing Appellant's wages, Dinkin received a Claim of Exemption form along with a detailed, sworn affidavit from Appellant setting forth the basis of his exemption.  [D.E. 1, Ex. A].  The affidavit was sent to Dinkin by Appellant's counsel and that email advised that Appellant's wages were exempt from garnishment.  [*Id*. at Ex. C].

Dinkin did not take time to evaluate the affidavit, instead he immediately filed a Sworn Statement with the state court disputing the Claim of Exemption without any factual basis whatsoever and in a bad-faith effort to maintain an improper garnishment.  [D.E. 1, ¶ 23]  Appellant later sent Dinkin three months' worth of bank statements along with a monthly budget.  [*Id*. at ¶ 26].

Dinkin refused to release the improper garnishment and, instead, leveraged the inability to obtain a timely hearing on the Claim of Exemption to (i) try and force a settlement with Appellant [D.E. 1, ¶ 30] and (ii) obtain extensive financial information from Appellant that had no bearing on the Claim of Exemption.  [*Id*. at ¶ 28].

Only when it became clear that Dinkin would be forced to sit for a deposition and explain, under oath, the factual basis for his Sworn Statement, did he release the improper garnishment.  [D.E. 1, ¶ 32].

Based on this conduct, Appellant filed a Complaint alleging violations of Sections 1692d, 1692e, 1692e(10), and 1692f of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

The District Court granted Appellees' Motion to Dismiss finding, as a matter of law, Appellant's Complaint failed to state a claim.

## I.    Appellees' Factual Arguments Disregard the Motion to Dismiss Standard.

Appellees begin their Answer Brief by trying to dispute Appellant's well-pleaded facts and inject factual arguments into this appeal.  [*See i.e.* Ans. Br. pp. 12, 17-18]

However, the standard for a Motion to Dismiss is well settled and requires this Court to accept the well-pleaded factual allegations as true and construe the facts in the light most favorable to Appellant.  [*Strickland v. Alexander*, -- F. 3d --, 2014 WL 6480542, *4 (11th Cir. 2014)].  Although not denying them, Appellees take issue with allegations made upon 'information and belief', [*see* Ans. Br. p. 12], particularly the allegation that Dinkin has a pattern and practice of automatically disputing Claims of Exemption without any factual basis.  [D.E. 1, ¶ 33].

However, the allegations in the Complaint readily and plausibly support such an inference.

Appellant's Complaint sets forth a detailed factual picture of a debt collection attorney who filed a false and misleading sworn statement with a state court in a garnishment proceeding without any factual or good-faith basis, leading to the harassment of the debtor. These allegations, considered along with the allegation that Appellees filed their sworn statement mere hours after receiving Appellant's affidavit and immediately began propounding intrusive, largely irrelevant discovery requests, as well as pressing consistently for a settlement entitling their client to relief to which Florida law does not entitle them, support the inference that this sort of dispute conduct is a regular practice of Appellees.

In addition to these vain efforts to disregard the Motion to Dismiss standard and engage in factual argument at the pleading stage, Appellees' arguments in defense of the District Court's ruling are flawed and should be rejected.

## II.    Appellees' Sworn Statement is Actionable Regardless of Whether it Constitutes a "Communication" Under the FDCPA.

Appellees make a threshold contention that the Sworn Statement at issue is not a "communication" under the FDCPA and, therefore, completely exempt from the statute's protections. [*See* Ans. Br. pp. 29-30]. This contention is wrong for multiple reasons.

7

First, Appellant's claims are based on Dinkin's *conduct*, not solely his *words*. Congress crafted certain provisions of the FDCPA to apply to communications - such as Section 1692c.   Other sections prohibit certain conduct, which could include, but is broader than, mere communications.  For example, 1692d prohibits "any conduct ... to harass, oppress, or abuse...."   1692e prohibits "any false, deceptive or misleading representation or means" to collect a debt.   Similarly, 1692f outlaws "unfair or unconscionable means" in debt collection.  Thus, Dinkin's conduct is what will be judged against the standards of the FDCPA.

Moreover, the Sworn Statement is a "communication", which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  [15 U.S.C. § 1692a(2)].  The Sworn Statement represented that a factual dispute existed whether Appellant's wages were exempt from Dinkin's attempts to collect the debt.  [D.E. 1, Ex. B].  This was conveyed to the state court, clerk of court and Appellant, through counsel.  The Sworn Statement fits squarely into the FDCPA's definition of a communication.

Appellant has cited several cases where courts have imposed FDCPA liability on debt collection attorneys for their improper garnishment filings.  [*See* Initial Br. pp. 26, 33, 38, 45].  None of those cases found the claims were barred because the improper activity was not a "communication."  Dinkin's conduct must be viewed against the FDCPA sections cited in Appellant's Complaint.

### III.    Section 1692d of the FDCPA Prohibits False or Misleading Affidavits.

Dinkin's actions in filing an affidavit with no factual basis, in the face of sworn evidence to the contrary, for the purpose of delaying a garnishment and attempting to coerce a settlement, is a perfect example of "conduct [which will] harass, oppress or abuse...." [15 U.S.C § 1692d].  At the pleading stage, it is hard to fathom how a contrary conclusion can be reached as a matter of law.

In the Answer Brief, Dinkin proposes that this Court not apply the "'least sophisticated consumer' standard first adopted by this Court in [*Jeter v. Credit Bureau, Inc.*, 760 F. 2d 1168 (11th Cir. 1985)] because Miljkovic was represented by counsel,…." [Ans. Br. p. 23].   However, this Court has stated that "for purposes of § 1692d, we adapted the 'least-sophisticated consumer' standard in order to take into account factors other than a debtor's level of sophistication." [*LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185, 1201 FN 33 (11th Cir. 2010) (internal citations omitted)].   This Court held that a consumer might be more susceptible to abuse because he is poor.  [*Id*].  This is exactly what Appellant has alleged.   Appellant is a truck driver earning $16.00 per hour.  [D.E. 1, p. 14]. Other than the $300 his disabled wife receives from Social Security, his wages are the sole source of support for himself and his disabled wife.  [*Id*. at ¶ 14-16]. There is no reason this Court should vary from the standard adopted in *Jeter* and *LeBlanc*.    Appellees go on to point out that the District Court found the

Complaint to be lacking any allegations demonstrating that Dinkin's conduct was harassing, abusive or oppressive. [Ans. Br. p. 38]. This line in the Order came after the lower court appeared to accept Appellant's allegation that Dinkin filed an improper sworn reply with knowledge to the contrary in order to lengthen a garnishment. [D.E. 34, p. 17]. These two lines contradict each other. In making this ruling, the court failed to adhere to the Motion to Dismiss standard and ignored paragraphs 23, 31, and 36a of the Complaint.

Additionally, although the Southern District of Florida in *Chalik* dismissed a Section 1692d claim based on a sworn affidavit, the dismissal was based on the fact that, at the time of the filing of the affidavit, the affiant had no actual knowledge of the grounds for the exemption. [*Chalik v. Westport Recovery Corp.*, 677 F.Supp.2d 1322, 1330 (S.D. Fla. 2009)]. Here, Appellees' Sworn Statement was filed with the Florida court after Dinkin received sworn evidence that Appellant's wages were exempt. Contrary to both Appellees' argument and the ruling below, it does not require any speculation at all to follow the *Chalik* court's reasoning to its natural implication that it would have found a 1692d claim to be viable when an affidavit was made *with actual knowledge* of the basis for the exemption. [*See Chalik*, 677 F.Supp.2d at 1329-30].

On these facts, only one line of reasoning can be correct, either the *Chalik* court's or the District Court's in this case. Given that this case is at the pleading

stage, and given the broad protections embodied in Section 1692d, a false or misleading affidavit made for an improper purpose and with actual knowledge of Appellant's exemption cannot be dismissed as a matter of law.

## IV. Appellees' Sworn Statement is a Significant, Material Violation of Section 1692e Despite Their Attempts to Minimize it.

In the face of its false and misleading character, Appellees take several tacks to minimize, neuter, and explain away the Sworn Statement. These arguments cannot overcome the well-pleaded fact that Dinkin filed a false and misleading affidavit with a court for the improper purpose of prolonging a garnishment and attempting to coerce a settlement. This conduct is exactly the kind of conduct that Section 1692e intended to prevent.

First, Appellees argue that the Sworn Statement was not material. [Ans. Br. pp. 39-40]. It is hard to imagine anything more material to a garnishment proceeding - a proceeding to collect a debt - than swearing to a court that Dinkin disputes Appellant's exemption in order to keep the wrongful garnishment in place. [*See Austin v. Frederick J. Hanna & Associates, P.C.*, No. 1:14-CV-00561-SCJ-JF 2014 WL 4724885, *6 (N.D. Ga. July 10, 2014) (garnishment is a debt collection activity covered by the FDCPA)]. The District Court's Order missed the forest for the trees by employing a hyper-technical approach to the materiality standard. [*See* D.E. 34, p. 20]. Taking the Complaint as a whole, and in light of the posture of

this case at the Motion to Dismiss stage, the Complaint certainly establishes that the false affidavit was material.

Next, Dinkin argues that Appellant's affidavit was self-serving and is not required to be given any credence. [Ans. Br. pp. 40-41]. This is rebutted by the well-reasoned opinion in *Hogue v. Palisades Collection, LLC*, which permitted an FDCPA claim where the collector garnished the debtor's account despite the debtor's attorney sending his client's affidavit that his account contained only exempt funds. [*Hogue*, 494 F.Supp.2d 1043 (S.D. Iowa 2007)]. In *Hogue*, the collector made the same argument that it could not rely on the self-serving information and was left with only garnishment and litigation to determine whether the funds were exempt. [*Id*. at 1048]. The court rebuffed this argument by noting that the debtor's attorney was as credible as, if not more credible than, any information a bank could provide. [*Id*]. Additionally, a collector may engage in due diligence but must also "stop and think." [*Id*. at 1051]. Dinkin, too, could have stopped and taken a minute for reflection. He could have requested more information before he filed an affidavit with no factual basis. Indeed, he had almost 3 weeks in which to gather information before he was required to file the Sworn Statement. [*See* Ans. Br. p. 46; Fla. Stat. § 77.041(3) (sworn statement in opposition to claim of exemption must be filed within 14 business days if served

12

by mail)]. Instead, Dinkin filed it the same day and chose to turn up the pressure and try to squeeze a settlement out of Appellant. [D.E. 1 ¶¶ 23, 28-30].

Appellees and the District Court attempt to deflate any importance of the Sworn Statement by categorizing it as a "formulaic procedural filing." [D.E. 34, p. 11; *see also* Ans. Br. p. 42]. This characterization ignores the legal import of the legislature requiring that the statement be sworn. [*See* Fla. Stat. § 77.041(3)]. If the legislature did not care about whether there was a good-faith basis to dispute the hearing, it could have removed the requirement that the dispute be sworn. The District Court and Appellees erroneously chose to characterize the filing of a sworn statement with the court as a mere *pro forma* exercise, when in fact, our laws, both state and federal, have long respected the serious nature of affidavits and sworn statements made to a court. Dinkin chose to submit a Sworn Statement that was false and misleading, and he should not be able to alter that fact by mischaracterizing his filing as somehow unimportant.

Finally, Appellees argue that the false and misleading affidavit is not actionable because Appellant was represented by an attorney. [Ans. Br. pp. 42-44]. It made no difference to Mr. Miljkovic and his disabled wife that his attorney could explain just how improper Dinkin's affidavit was - for his wages were still frozen. That an attorney may more effectively than a *pro se* debtor ultimately limit the impact of such improper conduct does not mean that conduct is not actionable.

As explained more fully in Appellant's Initial Brief, accepting such a rule would perversely disincentivize exactly what the FDCPA, through its fee-shifting provisions, has incentivized—the hiring of counsel. [*See* Initial Br.*,* p. 24.]

The *Chalik* court provided the proper analysis for this issue at the pleadings stage.  Even without a detailed affidavit such as Appellant's, the *Chalik* court held that a jury could find an untrue sworn statement denying a claim of exemption to be a false representation.  [*Chalik*, 677 F.Supp.2d at 1330].  It makes absolutely no difference, nor did the *Chalik* court find it relevant, whether the debtor is proceeding *pro se* or is represented by an attorney.

Neither the District Court nor Appellees can meaningfully distinguish the several analogous cases, other than noting that *Chalik*'s plaintiff proceeded *pro se*. [Ans. Br. p. 22].  Appellees' attempt simply mischaracterizes those cases in one broad pronouncement.  Dinkin claims that all of Appellant's cases are distinguishable because they all involved violations of state garnishment laws or the Social Security Act.  [Ans. Br. p. 47].  This attempt at distinguishing is equivalent to distinguishing the prior cases based on the middle names of the plaintiffs being different.  In short, it is irrelevant to the issues in either the prior cases or this one.

The rulings in cases such as *Bray* and *Hogue* were not based on violations of any law other than the FDCPA.  Instead, those cases and this case all involved debt

collectors pursuing garnishment in the face of knowledge that the garnished funds were exempt.  [*See Bray v. Cadle Co.*, No. 4:09-cv-663 2010 WL 4053794, *15 (S.D. Tex. 2010) (allegations that debt collector garnished account with knowledge "or reason to know" it contained Social Security funds stated claim under 1692f)]. Here, the only difference is that Appellant's funds are exempt by virtue of Florida Statute § 222.11 and not by virtue of the Social Security Act.

If this Court accepts Appellees' argument, then any debt collector could garnish an account containing only Social Security funds (or other wholly exempt funds) because the debt collector would not have to acknowledge anything - even sworn affidavits - other than a court ruling as evidence that the funds were exempt. Such a rule would incentivize debt collection attorneys to operate in bad-faith by exempting those improper actions from the FDCPA's protection.

There is simply no credible way that the claims based on allegations of filing a false and misleading affidavit with actual knowledge to the contrary in violation of Section 1692e and e(10) can be dismissed as a matter of law at the Motion to Dismiss stage.  *Chalik*, as well as the other cases relied upon by Appellant, strike the proper balance of protecting debtors from improper garnishment activities and preserving debt collectors' good faith efforts to legitimately collect debts.

**V.    Appellees' Groundless Sworn Statement of Dispute and the Actions Following it Give Rise to a Plausible Claim for Relief under Section 1692f.**

Appellees contend in the Answer Brief that their conduct could not be found "unfair" or "unconscionable" by any reasonable jury, despite Appellant's detailed description of the conduct in which Appellees engaged. As well pleaded in the Complaint, Appellees' actions include making a groundless, Sworn Statement of fact to the Florida court, followed by attempts to leverage the delay in the release of the funds to which Appellant was entitled under Florida law to cause Appellant to pay over funds that were legally exempt from garnishment.    Ultimately, Appellees only ended the delay after notice that Appellee Dinkin would be required to sit for a deposition under oath and explain the grounds for his purported "dispute."  [D.E. 1, ¶ 32].  To begin with, Appellees continue in their Answer Brief a tactic that they used in briefing and oral argument below—that of attempting to make the standards for violation of Florida Statutes § 57.105 into the *de facto* standards for the violation of Section 1692f.  [*See* Ans. Br. pp. 49-51, 52].  Section 1692f is a valid federal statute that contains its own standards for violation (whether the conduct in question was "unfair or unconscionable"), and the standards for violating the debt collection statutes of Florida or any other state are simply irrelevant to this federal standard.  [U.S. Const. art. VI, cl. 2; *see also* 15 U.S.C. § 1692n; *Chalik*, 677 F. Supp. 2d at 1329 ("it is the provisions of the

16

FDCPA that by and of themselves determine what debt collection activities are improper under federal law.")].

Appellees contend that the continuation of the garnishment could not have been "unfair or unconscionable" because the garnishment was released after Dinkin received "formal discovery responses," but in fact, Dinkin had received a sworn affidavit providing specific details of Appellant's Head of Family status. [D.E. 1, ¶¶ 18-19]. Appellants later received three months of bank statements, as well as a household budget, ten days prior to the release of the garnishment on February 28th. [D.E. 1 ¶ 26]. Appellees made no effort to release the garnishment during that time, instead, they sought additional financial information unrelated to the Head of Family exemption to get "a better picture of [Appellant] financially." [*Id*. at Ex. D]. More importantly, as will become clear at the evidentiary stages of this case, *none of the information requested and responded to as part of Dinkin's discovery requests would have added any non-redundant information going to the grounds for Appellant's exemption*. Other than redundant requests for the financial information contained in Appellant's bank statements and monthly budget, both of which Dinkin received on February 18th, the discovery requests were entirely directed at seeking sources of funds from which Appellees' client could recover the debt other than through garnishment, or other factual material irrelevant to Appellant's valid claim of exemption. [D.E. 1, ¶ 25].

Put simply, as well-pleaded in the Appellant's Complaint, the garnishment was released only once Dinkin was faced with having to explain what basis, if any, he had for the Sworn Statement. [D.E. 1, ¶¶ 31-32]. Only then did Appellees cease their efforts to leverage the wrongful garnishment into a settlement requiring the paying over of exempt funds by releasing the garnishment on February 28th. These facts plausibly establish that Appellees' actions in prolonging the garnishment were "unfair or unconscionable."

Even putting to the side this dispute as to the import of discovery responses, every bit of this portion of Appellees' Answer depends on what the content of the discovery requests and responses was, read in light of the information Appellees already possessed. Thus, the dispute is purely factual, and is based entirely on evidence that is not yet part of the record in this case. Therefore, it would be erroneous to affirm dismissal of the Section 1692f claim on this basis. [*See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)].

Appellees' Answer Brief then asks this Court to accept two major flaws in reasoning that have unfortunately appeared in district court opinions. The first is the obviously erroneous "rule" that a plaintiff may not state, in the alternative, a claim under Section 1692f if that plaintiff has also stated claims under other

Sections 1692d or 1692e that arose from the same set of facts.[1]  Appellant establishes in his Initial Brief just how this misreading emerged and was unthinkingly quoted in later cases, along with why it is wrong, and he stands on that analysis.  [*See* Initial Br. pp.43-55].  Appellees' responses to this argument appear to be (1) to amplify the importance of decisions from a few district courts that have gotten the law wrong, mostly in other circuits, [Ans. Br. pp. 53-54];[2] and (2) to cite the same erroneous body of case law, along with a few more recent

---

[1] Along the way, Appellees misread Federal Rule of Civil Procedure 10 to require separate counts apparently in every complaint filed.  In fact, the portion of Rule 10 that Appellees quote specifically states that the expectation of separate counts applies only when different claims are founded on "a separate transaction or occurrence."  [Ans. Br. p. 53 n.24 (quoting Fed. R. Civ. P. 10)].  The pattern of harassing, false, misleading, unfair, and unconscionable conduct at issue in this case is all part of the "same transaction or occurrence," as that term has been long understood under the Federal Rules.  [*See, e.g.*, *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) (endorsing the "logical relationship" test as the proper interpretation of "same transaction or occurrence" under Federal Rule of Civil Procedure 13)].

[2] As to this argument, only one aspect requires further comment.  Appellees contend that Appellant's argument that *Tsenes* was mis-applied beginning with *Foti* and following into the line of precedent that mistakenly followed *Foti* cannot be correct.  Their argument is that, if *Tsenes* was correct in dismissing "catch-all" claims under Section 1692f where *viable* claims under the other sections existed, then *Foti* and the cases quoting it must be founded on different justifications if they are also correct.  [Ans. Br. pp. 54-55].  Of course, this argument simply begs the question whether *Foti*, its progeny, and even *Tsenes* were correct.  Appellants contend that the entire line of precedent, even *Tsenes*, is erroneous because it imposes an election of remedies on the FDCPA, which does not contain one, but Appellants nevertheless understand that this court can resolve this appeal without passing on the question of whether *Tsenes* itself was correctly decided.  [Initial Br. p. 54 n. 4].  In other words, Appellant's contention is not that *Tsenes* was correct, it is that *Foti* and its progeny misapplied it and worsened its errors, to the point of setting up a "Catch-22" in FDCPA pleading.

district court cases making the same mistake, for the same erroneous proposition. [Ans. Br. pp. 55-57; Initial Br. p. 54 n. 5].[3]  Appellant trusts that the Court will see, based on the extensive discussion in Appellant's Initial Brief, that the lower courts in these cases have improperly imposed an election of remedies on plaintiffs seeking relief under the FDCPA that appears nowhere in the statute or its legislative history, and that this line of precedent should be disapproved in this Circuit.  It should be left to Congress, not the courts, to create exceptions to the scope and application of the FDCPA.

The second is the contention that if a plaintiff alleges that conduct occurring as part of the same transaction or occurrence violates more than one provision of a multi-provision consumer protection statute, this constitutes "impermissibly inconsistent" or "shotgun" pleading.  [Ans. Br. pp. 55].  This Court need only glance at Federal Rule of Civil Procedure 8's text to see how misguided this contention is.  Rule 8(d)(2) provides, "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Rule 8(d)(3) follows that by providing,

---

[3] Appellees regrettably also lob a "bad faith pleading" allegation at Appellant, [Ans. Br. p. 57], apparently for failing to heed a line of precedent that is not now, and never has been, the law of this Circuit, one that the Initial Brief in this case shows is an erroneous and poorly reasoned line of precedent adding a requirement to the FDCPA that appears nowhere in its provisions, and setting up a direct conflict with Rule 8(d)'s specific authorization of pleading in the alternative.

"A party may state as many separate claims or defenses as it has, regardless of consistency." Appellees' argument can only succeed if this court ignores the plain text of these Rules.[4]

Finally, Appellees contend that, even if the erroneous line of precedent beginning with *Tsenes* is ignored (as it should be), the Complaint fails to state a claim for relief under Section 1692f against Appellees. [Ans. Br. pp. 58-61].[5] In

---

[4] The "shotgun pleading" case from this Court that Appellees quote, [Ans. Br. p. 55 n.25], is inapposite, and is a good illustration of the problem of reading cases for pithy quotes rather than for factual and legal similarity. In *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008), the pleading in question was a Title VII and Section 1981 complaint that alleged claims of "race discrimination in 'pay, raises, benefits, ability to advance, and right to be free of racial discrimination, harassment and intimidation, and other terms and conditions of employment,'" on behalf of eight named plaintiffs and unknown numbers of purported class members, almost none of whom were connected up to the claims through any factual allegation. [*Id.* at 980]. Also, although each plaintiff's own claimed discrimination would constitute its own "transaction or occurrence," all non-class claims were combined into one count. [*Id.* (citing Fed.R. Civ. P. 10(b))]. This Court chastised both the plaintiffs' counsel for filing such a pleading that exhibited so little care and prior factual research, and the defense counsel for failing to move for a more definite statement, rather than filing its own "shotgun answer," stating numerous affirmative defenses unconnected to the facts that could be discerned from the complaint. [*See id.* at 980-81]. Here, there is no doubt at all as to who is claiming to have been harmed, how he claims to have been harmed, and who he claims harmed him, and the events alleged all arise from the same transaction or occurrence between the same two parties. Appellant's Complaint is nothing close to a "shotgun pleading." Moreover, *Davis* did not come to this Court upon the granting of a Motion to Dismiss under Rule 12(b)(6), but on a Motion for Attorney's Fees under Title VII, so it cannot be read to say anything about the standards to be applied at the Rule 12(b)(6) motion stage. Appellees' misreading of Rules 8 and 10 simply has caused them to misread and misuse *Davis*.

[5] Incidentally, Appellees are wrong to contend that the District Court did not base its Section 1692f ruling entirely on the erroneous precedent discussed above.

support, Appellees cite and quote at length a case from the Seventh Circuit holding that Section 1692f cannot be used as a vehicle to enforce other provisions of federal law, in that case, the Social Security Act.  [Ans. Br. pp. 58-59 (quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007)].  Since this case does not involve the use of Section 1692f to enforce other provisions of federal law, *Beler* is inapposite.

Springboarding from *Beler*,[6] however, Appellees go on to contend that the factual allegations found in Appellant's Complaint do not establish a claim for relief under Section 1692f.  [Ans. Br. pp. 59-61].  Appellees enumerate six facts that they contend show that no "unfair or unconscionable" conduct could have occurred.  [Ans. Br. pp. 59-60].  Appellant takes each item in turn.

Item (1) attempts to reanimate the contention refuted above that the Florida Garnishment Statute's standards should determine whether the FDCPA is violated, and it should be rejected for the same reasons.  Item (2) asks this Court to apply the

---

[Ans. Br. p. 58].  In ruling on the Section 1692f claim, the court specifically observed: "But the Court agrees with Defendants that Defendants' hope that the garnishment would lead to a settlement would not constitute unconscionable or unfair conduct unless Defendants also filed the sworn reply falsely. Thus, despite the email evidence, Miljkovic's § 1692f claim still depends on the misconduct charged under §§ 1692e and 1692e(10) and is therefore insufficient to state a separate claim."  [D.E. 34, at 21-22].

[6] Appellees apparently use *Beler* as a foil, hoping that this Court will view the Complaint in this case as being somehow more objectionable than the complaint in *Beler*, [Ans. Br. p. 59], despite the obvious fact that the flaw in the *Beler* complaint is completely unconnected to any aspect of Appellant's Complaint in this case.

*Beler* strawman again to this case, finding the lack of violation of other provisions of federal law to be somehow relevant to whether the FDCPA was violated. Item (3) states a fact that can be found nowhere in the Complaint, and one that is not relevant to whether Appellees acted unconscionably or unfairly in needlessly prolonging a wrongful garnishment. It is the needless, bad-faith prolonging of a wrongful garnishment that is the basis of this case, not the underlying debt, so this is yet another strawman. Item (4) once again attempts to import state-law rules of conduct as the standard for the FDCPA. While it is true that, under Florida law, Appellant was required to prove his entitlement to the exemption if legitimately contested, it is federal law, namely the FDCPA, that determines whether filing a sworn dispute without any foundation, and then prolonging the groundless dispute beyond the date on which Appellees were on notice that Appellant's were exempt, was "unfair or unconscionable." [*See supra* at 16 – 17]. Item (5) merely sets forth a factual credibility dispute relating to evidence of Appellant's financial status not presently in front of the court, a dispute which the court may not credit to the movant at the motion to dismiss stage. [*Leatherman*, 507 U.S. at 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint.")]. And finally, item (6) also uses what is factually disputed in this case—the motivation for Dinkin's decision to finally release the wrongful garnishment—as the basis for why the Complaint

should be dismissed at the pleading stage. Similar to Appellees' allegation as to the credibility of the documentation they received, this allegation cannot be credited to the movant at the motion to dismiss stage. [*Id*]. As should be clear, none of these enumerated points justifies dismissing Appellant's Complaint.

Appellees further attempt to introduce factual evidence that is not present in the four corners of the Complaint, or any of its Exhibits, in an attempt to establish that Appellees' conduct was, as a matter of fact, not "unfair or unconscionable." [Ans. Br. p. 60]. Appellees claim that "it was Dinkin's office that initiated the scheduling process." [Ans. Br. p. 60]. In support of this proposition, Appellees cite to Paragraphs 27-29 of Appellant's Complaint. None of these paragraphs, or any other allegations in the Complaint, state who "initiated the scheduling process." Rather, the Complaint sets forth the dilatory tactics of Appellees in attempting to draw out a wrongful garnishment subject to an exemption that they had no independent factual basis to dispute, and that was in fact supported by sworn and supporting documentation submitted to them prior to any scheduling of an evidentiary hearing, regardless of who "initiated the scheduling." [D.E. 1 ¶¶ 21-32].

Also, while the Complaint does allege that the evidentiary hearing was set for the "first available hearing date," this date was then nearly six weeks into the future. [D.E. 1 ¶ 27]. Thus, the failure to release the garnishment based on the

24

documentation conclusively establishing the exemption presented Appellant with the prospect of a possible six-week extension, *in addition to* the time that had already passed under the wrongful garnishment, *and* the time it would have taken for the court to render a decision, before the full extent of his salary (which was *necessary for the support of his disabled wife*) could have been restored. This predictably placed Appellant in a constant state of apprehension, which could potentially have lasted for at least three pay periods. Appellees sought to leverage this delay into a settlement by hoping the delay would make Appellant much more amenable to agreeing to have *some* of his exempt funds garnished to prevent having *all* of them garnished. [D.E. 1, ¶ 30].

The conduct of Appellees in refusing to release the garnishment after receiving a Sworn Statement and, later, the exact financial information requested by Appellees, and of releasing the garnishment only upon receipt of a Notice of Deposition for Dinkin, "plausibly suggests" that they desired to use the leverage that this state of apprehension created to secure a settlement entitling their client to more relief than the law provides. [*See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (dismissing a complaint because its allegations did not "plausibly suggest" an intent to discriminate)].

Coupled with (1) the almost immediate filing of the sworn statement to the Florida court that the facts underlying the exemption were in dispute on the same

day they were served with Appellant's Affidavit of Exemption; (2) the propounding of numerous discovery requests, most of which went not to the grounds for Appellant's exemption, but to post-judgment efforts to identify sources of funds other than Appellant's wages from which Appellees' client could recover its judgment; and (3) the drawing of connections between the upcoming evidentiary hearing and the prospects of obtaining a partial garnishment in the email communications that are Exhibits to the Complaint, Appellees' failure to release the garnishment until after learning that Dinkin would have to sit for a deposition and defend the grounds for the exemption dispute under oath plausibly show that their conduct was "unfair or unconscionable."  [*See Hogue*, 494 F. Supp. 2d 1043 (S.D. Iowa 2007) (declining to dismiss a Section 1692f claim where "the collector behaved unconscionably when it initiated a garnishment proceeding after the debtor's attorney submitted the debtor's affidavit, asserting she was exempt.")].

Appellees' responses to the Initial Brief as to the Section 1692f claim amounts to a series of misdirections, obfuscations, and improper reliance on evidentiary material that is not part of the record in this case.  The fact that Appellees dispute the factual allegations of Appellant's Section 1692f claims and the credibility of the evidence on which they are based only highlights the impropriety of dismissing Appellant's claim at this stage in the case.  Additionally, the District Court's reliance on a line of precedent, none of which is binding on

this Court, that contradicts the plain text of both the FDCPA and Federal Rule of Civil Procedure 8(d), was erroneous. This Court should accordingly reverse the portion of the District Court's Order that dismisses Appellant's Section 1692f claim.

## **CONCLUSION**

Appellees' Answer Brief cannot salvage the erroneous reasoning of the District Court's Order. Other than relying on meaningless distinctions in *Chalik*, neither the District Court nor Appellees can meaningfully address the several other cases – *i.e. Hogue, Bray* – finding viable FDCPA claims in virtually identical circumstances. Given the well-pleaded allegations in the Complaint, Appellees' conduct cannot be immunized from further review at this early stage of the case. The Motion to Dismiss standard, as well as the relevant substantive law cited herein, require the District Court's Order to be reversed.

Respectfully submitted,

/s/ Eric C. Roberson_____
Eric C. Roberson
Florida Bar. No. 14649
Eric C. Roberson P.A.
2064 Park Street
Jacksonville, FL 32204
(904) 404-8800
(904) 517-8387 (facsimile)
eric@robersonlawjax.com

and

Scott R. Bauries
Florida Bar No. 14968
7207 Vaughn Road
Canton, GA 30115
(904) 200-1352
(904) 517-8387 (facsimile)
scott.bauries@uky.edu

**Attorneys for Appellant Nedzad Miljkovic**

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 5,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared using Microsoft Office in 14-point font, and the type is plain, Times New Roman style.

*s/ Eric C. Roberson*
Attorney for Appellant
Dated:  December 4, 2014

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rule 25(d), Federal Rules of Appellate Procedure, this is to certify that on December 4, 2014, a copy of Appellant's Reply Brief was served on the following as indicated below:

Steven R. Braten, Esq.
Steven R. Braten, P.A.
500 Gulfstream Blvd., Ste. 104
Delray Beach, Florida 33483
Email: srblaw2012@gmail.com
(by email per written consent)

/s/ Eric C. Roberson
Eric C. Roberson