LAW OFFICES OF
STEVEN R. BRATEN
PROFESSIONAL ASSOCIATION

STEVEN R. BRATEN, ESQUIRE

SBRATEN@MYASSOCIATIONATTORNEY.COM
OF COUNSEL:
MAXINE A. NOEL, ESQUIRE
CERTIFIED CIVIL COURT MEDIATOR

500 GULFSTREAM BOULEVARD
SUITE 104
DELRAY BEACH, FL 33483
TEL: 561-270-3291
FAX: 888-202-1679

February 16, 2015

United States Court of Appeals
      for the Eleventh Circuit
Elbert Parr Tuttle Court of Appeals Building
56 Forsyth Street
Atlanta, Georgia 30303

Appeal Number:   4-13715-EE
Case Style:         Nedzad Miljkovic v. Shafritz and Dinkin, P.A., et al.
District Court Docket No.:  8:14-cv-00635-VMC-TBM

To The Clerk of the Court:

        Pursuant to Rule 28.1, this letter serves to notify the Court of pertinent and
significant supplemental authority on the issues briefed by the parties in the above
matter, to wit: Powers vs. Credit Management Services, Inc., Case No. 13-2831
(8th Cir. Jan. 13, 2015). Part III of this case pertains to Section I. A and C of
Appellees' Answer Brief. The Eighth Circuit addresses the standard by which a
"communication" under the FDCPA directed to a lawyer representing a consumer
should be evaluated.

Very truly yours,

Steven R. Braten, Esquire
Counsel for Appellee

Cc:    Eric C. Roberson, Esquire (w/copy of citation)
       Scott R. Bauries, Esquire (w/copy of citation)

# United States Court of Appeals
## For the Eighth Circuit

No. 13-2831

Laura Powers, et al.

*Plaintiffs - Appellees*

v.

Credit Management Services, Inc., et al.

*Defendants - Appellants*

Appeal from United States District Court
for the District of Nebraska - Omaha

Submitted: September 8, 2014
Filed: January 13, 2015

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

LOKEN, Circuit Judge.

This is an interlocutory appeal of a district court order certifying four classes of Nebraska consumers, an appeal authorized by Rule 23(f) of the Federal Rules of Civil Procedure. Credit Management Services, Inc. (CMS) is a Nebraska corporation engaged in collecting consumer debts assigned to CMS by the original creditor (or by a prior assignee). CMS is a "debt collector" subject to the provisions of the federal Fair Debt Collection Practices Act (FDCPA). See 15 U.S.C. § 1692a(6).

The record reflects that CMS commences consumer debt collection actions in Nebraska state courts by filing standard-form complaints. The complaints allege, *inter alia*, that "more than 90 days have elapsed since the presentation of this claim" to the consumer and seek prejudgment interest "pursuant to" Neb. Rev. Stat. § 25-1801 or § 45-104, and attorney fees "as allowable by law." When named plaintiffs Laura Powers and Nichole and Jason Palmer contested CMS's state court collection complaints (Exhibits A and C to plaintiffs' First Amended Complaint), CMS served nearly identical discovery requests seeking disclosure of detailed employment and financial information, including their rates of compensation and copies of their recent tax returns (Exhibits B and D).

Plaintiffs filed this putative class action against CMS and four in-house CMS attorneys customarily listed in the signature boxes of the standard-form collection complaints and discovery requests. Plaintiffs allege that CMS's standard-form pleadings violate various provisions of the FDCPA, making them unfair or deceptive acts or practices that also violate the Nebraska Consumer Protection Act (NCPA), Neb. Rev. Stat. § 59-1602. In certifying four classes, the district court agreed with plaintiffs that the predominant common question is whether the defendants sent each class member standard collection complaints and discovery requests, which violate the FDCPA and NCPA. Powers v. Credit Mgmt. Servs., Inc., No. 8:11CV436, 2013 WL 3716412, at *5 (D. Neb. July 12, 2013). The four classes consist of persons who received a county court collection complaint or discovery requests seeking to collect a debt "for personal, family, or household purposes," or had such a collection action pending, during the applicable one-year (FDCPA) and four-year (NCPA) limitations periods. We granted CMS leave to appeal and now reverse, concluding that the district court abused its discretion by failing to conduct the "rigorous analysis . . . of what the parties must prove" that Rule 23 requires. Elizabeth M. v. Montenez, 458 F.3d 779, 786 (8th Cir. 2006), citing Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 622-23 (1997); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

-2-

## I. Framing the Issues

Rule 23(a) provides that no class action may be certified unless the court determines:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

If these requirements are met, the court must find that the class can be certified under one of the Rule 23(b) categories. Here, the district court certified the classes under Rule 23(b)(3), which requires finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The required "preliminary inquiry of the class certification stage may require the court to resolve disputes going to the factual setting of the case, and such disputes may overlap the merits of the case." Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 372 (8th Cir. 2013) (quotation omitted). Here, the four classes comprise thousands of Nebraska consumers sued by CMS in state courts using standard-form complaints and discovery requests. Obviously, the nature of the underlying consumer debts, the relief sought by CMS in state court, and the outcome of the many state court suits varied substantially. Thus, class certification was appropriate only if, as plaintiffs alleged, CMS's standard-form complaints and discovery requests, *on their face,* violated the FDCPA and therefore the NCPA. Though cross motions for summary judgment were pending when the district court ruled, the court granted class certification without ruling on those motions. The court concluded that the "main issue" establishing commonality, typicality, and predominance is "whether CMS's

-3-

complaints in the form of Exhibits A & C and discovery requests in the form of Exhibits B & D violate the FDCPA and/or NCPA." Powers, 2013 WL 3716412, at *4, *7. The court did not conduct a "rigorous analysis" of what plaintiffs must prove to prevail on their facial invalidity theories. Our task, then, is to fill this void, which requires separate analyses of the legal theories attacking the standard-form complaints and discovery requests.

In conducting this analysis, we bear in mind an important distinction. Run-of-the-mill certified FDCPA class actions have involved standard-form collection letters sent directly to consumers before the filing of collection lawsuits. See, e.g., Evans v. Am. Credit Sys., Inc., 222 F.R.D. 388, 394 (D. Neb. 2004), on which the district court relied. But in this case, plaintiffs challenge standard-form *pleadings* used by a debt collector in collection lawsuits it actually filed. In Heintz v. Jenkins, 514 U.S. 291, 299 (1995), the Supreme Court held that a 1986 amendment applied the FDCPA's substantive prohibitions to litigation activities of attorneys who regularly engage in consumer debt collection. However, the Court noted "the statute's apparent objective of preserving creditors' judicial remedies." Id. at 296. The Act's "conduct-regulating provisions," the Court later cautioned, "should not be assumed to compel absurd results when applied to debt collecting attorneys." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, 559 U.S. 573, 600 (2010). It is a matter of common knowledge in the legal community that standard form pleadings are routinely used by cost-conscious attorneys in all types of litigation.

We recently surveyed the complex question of FDCPA liability for litigation activities in a non-class action, concluding that a debt collector's fact allegations in a state court pleading are not false and misleading for purposes of § 1692c simply because they were "rejected as not adequately supported in the collection suit." Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 819 (8th Cir. 2012). In the class certification context, these complexities -- ignored by plaintiffs and not addressed by the district court -- are highly relevant to a rigorous analysis of the well-

traveled Rule 23 inquiries into commonality, typicality, adequate representation of the class, predominance, and superiority. See Jenkins v. Gen. Collection Co., No. 8:06CV743, 2008 WL 4104677, at *11-13 (D. Neb. Aug. 28, 2008).

## II. The Standard-Form Complaint Classes

CMS served named plaintiff Powers a state court collection complaint (Exhibit A) alleging she owed $454.00 for goods and services provided by "GIKK Ortho Specialists." The complaint sought prejudgment interest "pursuant to Sec. 45-104." CMS served the Palmer named plaintiffs a collection complaint (Exhibit C) alleging they owed $856.38 for goods and services provided by "OB/GYN physicians." The complaint sought prejudgment interest "pursuant to Sec. 25-1801." Both complaints sought "the costs of this action, prejudgment interest, attorney's fees if applicable, and post-judgment interest as allowed by law." The FDCPA prohibits a debt collector from attempting to collect any amount, including interest on the principal obligation, "unless such amount is expressly . . . permitted by law." 15 U.S.C. § 1692f(1). Plaintiffs claim Exhibits A and C were facially invalid because they sought prejudgment interest not permitted by the cited Nebraska statutes.

**The § 45-104 Subclass.** Section 45-104 allows an award of prejudgment interest at the statutory rate "on money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon." Plaintiffs allege that CMS's standard-form allegations that interest may be awarded under this statute violate FDCPA § 1692f(1) because § 45-104 does not apply if the consumer contests the collection lawsuit, in which case CMS has an unliquidated claim and prejudgment interest may not be recovered unless additional requirements are met under § 45-103.02.

Rule 23(a)(2) requires plaintiffs to show there are questions of law or fact common to the four classes. Commonality requires a showing that class members

-5-

"have suffered the same injury." Gen. Tel. Co. v. Falcon, 457 U.S. 147, 157 (1982). The issue as framed by plaintiffs seems to present an unresolved common question of law in applying § 45-104. However, "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Dukes, 131 S. Ct. at 2551 (quotation omitted; emphasis in original).

If plaintiffs' interpretation of § 45-104 is wrong, then the FDCPA and NCPA named plaintiffs lose on this theory attacking the standard-form complaints, and prompt resolution of the summary judgment cross motions would have obviated the need for class certification of these claims.[1] On the other hand, if plaintiffs' state law theory is correct, many individualized inquiries are required to resolve class members' claims. Our decision in Hemmingsen established that, to recover under FDCPA § 1692f, a class member must prove that CMS's prayer for an award of interest in the state court collection suit was "unfair or unconscionable," not merely unsuccessful. Therefore, to resolve this theory of liability, the records pertaining to every state court collection suit must be reviewed to determine: (i) whether CMS claimed prejudgment interest under § 45-104 (as in the Powers complaint, but not in the Palmer complaint); (ii) if claimed, did CMS recover prejudgment interest under § 45-104, making the alleged violation of FDCPA § 1692f(1) material, see Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757-58 (7th Cir. 2009); (iii) for every potentially material violation, whether the underlying consumer transaction reflects that CMS had a legitimate claim

---

[1] Although a district court must determine whether to certify a class at "an early practicable time" in the litigation, Rule 23(c)(1)(A), it is not uncommon for a district court to rule on a summary judgment motion that will clarify or simplify the litigation prior to ruling on class certification. See Hartley v. Suburban Radiologic Consultants, Ltd., 295 F.R.D. 357, 367-68 (D. Minn. 2013); Jenkins v. General Collection Co., 538 F. Supp. 2d 1165 (D. Neb. 2008).

-6-

under § 45-104;[2] (iv) whether plaintiffs' legal theory was litigated by the class member and resolved by the state court for issue preclusion purposes, see generally Taylor v. Sturgell, 553 U.S. 880, 891-93 (2008).[3]

The district court also failed to address a legal question whose resolution may depend on the facts of a particular class member's claim -- whether the affirmative defense in 15 U.S.C. § 1692k(c) applies to FDCPA violations caused by the debt collector's misinterpretation of what is "permitted by" state law, a question the Supreme Court declined to decide in Jerman, 559 U.S. at 579-81 n.4. See Johnson v. Riddle, 305 F.3d 1107, 1121-24 (10th Cir. 2002).

---

[2]Under § 45-104, a claim is liquidated if "'no reasonable controversy exists as to either plaintiff's right to recovery or as to the amount of such recovery.' The mere contesting of the amount of or right to recovery does not alone create a reasonable controversy." Lincoln Benefit Life Co. v. Edwards, 243 F.3d 457, 462 (8th Cir. 2001), quoting Lange Indus. v. Hallam Grain Co., 507 N.W.2d 465, 477 (Neb. 1993).

[3]The district court concluded that the underlying state court judgments were irrelevant to class certification because "plaintiffs are contesting the defendants' collection practices and not whether debt was owed." Powers v. Credit Mgmt. Servs., Inc., No. 8:11CV436, 2013 WL 1189114, at *11 (D. Neb. Mar. 14, 2013). We disagree. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, *whether on the same or a different claim.*" Restatement (Second) of Judgments § 27 (emphasis added); see also Chicago, R.I. & P. Ry. v. Schendel, 270 U.S. 611, 616-17 (1926); Bell v. Sellevold, 713 F.2d 1396, 1404 (8th Cir. 1983). Because plaintiffs challenge CMS's use of a standard-form *pleading,* CMS is not liable under the FDCPA to any class member who unsuccessfully litigated this issue in state court. For class members whose state court collection suits are pending, a federal court has jurisdiction over overlapping FDCPA claims, but "it would be proper for the district court to stay proceedings and direct that [plaintiffs] proceed to file their action as a permissive counterclaim in state court." Peterson v. United Accounts, Inc., 638 F.2d 1134, 1137 (8th Cir. 1981). Thus, issue preclusion principles fatally undermine the district court's analysis of commonality and predominance.

Finally, the district court erred in ruling that plaintiffs' separate claims against the in-house collection attorneys did not affect class certification because "the question of individual defendant liability should be addressed at a later stage in the proceedings." Powers, 2013 WL 3716412, at *5. The issue is more complex. The record reflects that (i) one in-house attorney signed the standard-form pleadings above a signature box showing all four, and (ii) these debt-ridden young lawyers have a negative or very small net worth. Each class member may have a stronger claim against the individual attorney who signed the pleadings in that consumer's collection lawsuit. Because total damages are capped in an FDCPA class action,[4] a smaller class limited to collection suits in which an individual defendant participated would hold out the prospect of higher recoveries for those with the strongest claims. See Crawford v. Equifax Payment Servs. Inc., 201 F.3d 877, 882 (7th Cir. 2000). Thus, by alleging that impecunious individual defendants are jointly and severally liable to all members of the largest possible classes, plaintiffs created an issue of class action superiority that cannot be ignored at the certification stage.[5]

**The § 25-1801 Subclass.** Section 25-1801 provides that any person may present a claim for less than $2000 and, "at the expiration of ninety days after the presentation of such claim," may sue on the claim and recover interest at the statutory

---

[4]The FDCPA caps statutory damages in a class action at the lesser of $500,000 or one per cent of the debt collector's the net worth. 15 U.S.C. § 1692k(a)(2)(B)(ii). An individual plaintiff, on the other hand, can recover up to $1,000 in statutory damages, plus attorneys' fees and costs. § 1692(k)(a)(2)(A) and (a)(3). The NCPA allows statutory damages for each class member up to $1,000, with no apparent cap for class actions. Neb. Rev. Stat. § 59-1609.

[5]There is irony here, indeed injustice, that should not go unnoticed. Plaintiffs' experienced class action attorneys assert aggressive theories restricting the application of Nebraska prejudgment interest statutes in seeking to impose potentially mammoth FDCPA damage liability on young attorneys who filed standard-form pleadings seeking awards of interest to which CMS *might* not be entitled.

rate "from the date of presentation." Plaintiffs allege that CMS's standard-form complaints violate FDCPA § 1692f(1) because CMS alleges that "more than 90 days have elapsed since the presentation of this claim," when in fact CMS does not present the claim but relies on the original creditor's billing statement, and therefore recovery of prejudgment interest is not "permitted by" § 25-1801.

Again, the issue as framed appears to present a common question of law -- whether § 25-1801 requires that an assignee of the original creditor must personally present the claim at least ninety days before commencing a collection suit. The text of the Nebraska statute does not explicitly resolve the question. A prompt grant of defendants' summary judgment motion would have resolved this portion of the named plaintiffs' claims, no doubt obviating the need for class certification. But again, even if plaintiffs' state law theory is correct, individualized inquiries are required. Even though every standard-form complaint apparently included the ninety-day allegation, each class member's state court collection suit must be examined to determine: (i) did CMS seek prejudgment interest under § 25-1801, as it did in the Palmer complaint but not in the Powers complaint; (ii) if so, did CMS personally provide the ninety-day presentation, in which case CMS complied with plaintiffs' interpretation of § 25-1801, or did CMS rely on an assignor's billing statement or demand for payment;[6] (iii) did CMS recover prejudgment interest under § 25-1801, making the alleged FDCPA violation material; and (iv) was plaintiffs' legal theory litigated by the class member and resolved by the state court for issue preclusion purposes.

For these reasons, the standard-form complaint classes do not meet the commonality, predominance, and superiority requirements of Rule 23.

---

[6]CMS alleged that it usually relies on original billing statements, but "where such a bill or demand is not sent, Defendants do personally present the claim."

## III. The Standard-Form Discovery Requests

Plaintiffs' First Amended Complaint alleged that CMS's standard-form discovery instructions "confuse and mislead the unsophisticated consumer as to his or her rights in answering said discovery," and that the requests demand "irrelevant and highly personal financial information from the consumer." In the underlying collection suits, the named plaintiffs were represented by counsel who either prepared and filed or reviewed and filed responses to CMS's discovery requests. Thus, in considering plaintiffs' claims, the initial question is whether discovery requests sent to a represented debtor during the course of litigation can violate the FDCPA.

In Hemmingsen, we noted, "circuit courts have struggled to define the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate §§ 1692d-f." 674 F.3d at 818. Most reported decisions involved collection complaints, which are typically served on a consumer not yet represented by counsel and therefore can have the same ability to mislead and confuse as pre-litigation collection letters. See, e.g., Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1032 (9th Cir. 2010). Beyond those cases, at least two circuits, applying Heintz v. Jenkins, have held that the FDCPA also applies to discovery requests and procedures.    See McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011) (involving requests to admit "facts that were not true" served on a *pro se* consumer); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 235 (4th Cir. 2007) (reversing a Rule 12(b)(6) dismissal).[7] Consistent with our decision in Hemmingsen, we decline to adopt an inflexible rule that the FDCPA can never apply to discovery requests made directly

[7]On remand the district court adopted the Seventh Circuit's "competent lawyer" standard and granted summary judgment dismissing the FDCPA claim because the alleged errors in the debt collector's interrogatories would have been "immediately apparent to even the least competent member of the Maryland bar." Sayyed v. Wolpoff & Abramson, 733 F. Supp. 2d 635, 643 (D. Md. 2010).

-10-

to the consumer's attorney during the course of debt collection litigation. But the standard by which such claims should be evaluated is a different question.

In granting class certification on plaintiffs' discovery request claims, the district court emphasized that FDCPA violations are assessed objectively through the eyes of an unsophisticated consumer and therefore the fact that the named plaintiffs were represented by attorneys was irrelevant to class certification. Powers, 2013 WL 3716412, at *5. We disagree. The unsophisticated consumer standard applies to FDCPA claims challenging debt collection letters and other communications directly to the consumer. See Peters v. Gen. Servs. Bureau., Inc., 277 F.3d 1051, 1055 (8th Cir. 2002); Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000). However, we agree with other circuits that the unsophisticated consumer standard is "inappropriate for judging communications with lawyers." Evory v. RJM Acquisitions Funding, LLC, 505 F.3d 769, 774 (7th Cir. 2007), citing Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 953-54 (10th Cir. 1996). Rather, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." Evory, 505 F.3d at 775. As the Second Circuit observed in a non-discovery context, "Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 1996); see also Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 939 (9th Cir. 2007) ("Attorneys possess exactly the degree of sophistication and legal wherewithal that individual debtors do not.").

Applying the "competent lawyer" standard to discovery requests sent to a represented debtor during the course of litigation, we conclude plaintiffs' facial invalidity claims do not meet the commonality and predominance requirements of Rules 23(a) and 23(b)(3). In the typical debt collection case, a competent lawyer served with the debt collector's discovery requests does not need instructions as to the

-11-

client's "rights in answering," and will object to requests that are irrelevant or demand sensitive information. The competent lawyer brings a discovery dispute that cannot be resolved informally to the court, which rules on fact-intensive questions of reasonableness on an adequate record. As we observed in Hemmingsen, state court judges presiding over collection suits have ample power to sanction a debt collector and/or its lawyer for engaging in vexatious litigation tactics. "There is no need for follow-on § 1692e litigation that increases the cost of resolving bona fide debtor-creditor disputes." 674 F.3d at 820. Cf. Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010) ("There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself.")

Nowhere in the lengthy district court opinions or in plaintiffs' brief on appeal do we find an analysis of how claims that standard-form discovery requests were irrelevant and unreasonable can be adjudicated without either knowing the factual context in which those requests were made in a particular case, or strong evidence of a standard practice that the debt collector persistently abused. Under Rule 23's commonality and more demanding predominance requirements, we conclude that class certification of these claims was improper. See Amchem, 521 U.S. at 624.

The district court's class certification order dated July 12, 2013 is reversed.

-12-